STEVEN G. KALAR
Federal Public Defender
ELIZABETH FALK
Assistant Federal Public Defender
19th Floor Federal Building
450 Golden Gate Avenue
San Francisco, CA 94102
Telephone: (415) 436-7700

Counsel for Defendant SETH

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　Plaintiff,<br><br>　v.<br><br>DA SETH,<br><br>　　　　　　　Defendant. | No. CR 17-480 MMC<br><br>DEFENDANT DA SETH'S SENTENCING MEMORANDUM<br><br>Court:　Hon. Maxine M. Chesney<br>Date:　January 31, 2018<br>Time:　2:15 p.m |

## INTRODUCTION

Mr. Da Seth now appears before the Court for sentencing, having pleaded guilty to the two charges in the indictment related to passport fraud and possession of a false identification document with the intent to defraud the United States. The Probation Officer and the United States Attorney's Office has appropriately recommended a probationary sentence in this case, for good reason. This offense was not accomplished for malicious purpose, immigration-related purpose, or typical reasons individuals commit passport fraud. This offense occurred because

1

*U.S. v. Seth*, 17-480 MMC
DEF SENT. MEMO

Mr. Seth wanted to accompany his wife to have surgery she could only afford in the Dominican Republic. While Mr. Seth has a criminal record, he is also a family-oriented man with 4 children whom he is extremely dedicated to. While all parties agree that Mr. Seth's choice of methods in this case was extremely poor, the fundamental root of this offense was to attempt to protect his wife. Both he and his wife have learned a great deal through the prosecution of this offense. There is little reason to expect that Mr. Seth will make a similar mistake in the future.

Mr. Seth suffers from a chronic health condition that requires frequent doctors visits in San Joaquin County, and his family currently operates on a low level of income given Mr. Seth's wife recent disabilities. Given these factors, it makes sense that this Court sentence Mr. Seth to probation terms that allow him to continue to reside in Stockton. He needs to change jobs and find full time employment near his home. Accordingly, the only difference in Mr. Seth's request for sentencing and the remaining parties is that he requests that the Court not place him in a halfway house for three months, and instead sentence him to three years of probation with 3 months of electronic monitoring, a $200 special assessment, and no fine.

## STATEMENT OF FACTS

On December 12, 2016, Mr. Seth's wife, Vongputhear "Laura" May booked travel for herself and her husband, the defendant, in order to accomplish a surgery in the Dominican Republic the following March. *See* Declaration of Elizabeth M. Falk ("Falk Decl.") at Exhibit C (travel confirmation). The reason Ms. May booked the surgery out of the country is due to the fact the Dominican Republic was the only place that she could afford to have the surgery. Because Mr. Seth did not want his wife to travel alone to the Dominican, he planned to travel with her. Accordingly, shortly after booking the trip, Mr. Seth applied for a U.S. passport, expecting nothing of consequence would happen.

2

*U.S. v. Seth*, 17-480 MMC
DEF SENT. MEMO

Instead, Mr. Seth's application was rejected – after the prepaid tickets and were no longer refundable.  Although the rejection letter indicated that he had an outstanding arrest warrant out of Ohio, Mr. Seth did not understand why because he was not on active supervision there and he had been granted permission to move back to California while on probation.  Moreover, he had been released on the 2015 incident in 2016 without issue.  The warrant had not shown up when he was discharged from custody in 2016, and nothing had happened between then and December, 2016.  He further attempted to contact the Court in Ohio, but could not get any information about the nature of the warrant or the reasons it had issued.

Mr. Seth then made an unfortunate decision that led to his conviction on the instant case.  Rather than send his wife alone to have surgery, he elected to apply for a passport in his brother's name so he could go with his wife to have the surgery, take care of her in recovery there, return, and then attempt to clear up the warrant in Ohio upon their return.[1]  This decision was certainly not wise, and can only be described as immature at best, inane at worst.  But the root cause of that decision was Mr. Seth's fear of his wife going to a foreign country to have surgery when he was not confident she would be safe.  As it turned out, not only did Ms. May have to go by herself to have the surgery due to Mr. Seth's arrest (see Falk Dec., Exhibit D), Mr. Seth wound up with a federal conviction for that decision.

Stupid, yes.  Heartless? No.  As this case reveals, Mr. Seth made a poor calculus here and a very bad decision.  But the decision was not for a nefarious purpose, nor accomplished in an effort to pass himself off as a citizen when he is not.  More so than anything, this offense reveals an immaturity of thought that the U.S. Probation Office can most likely help Mr. Seth work through.  To his credit, following arrest, Mr. Seth has been a model of pretrial services

---

[1] He did not have the money to go to Ohio pre-surgery, as all the family funds in savings had gone to the surgery and travel for it.

*U.S. v. Seth*, 17-480 MMC
DEF SENT. MEMO

3

compliance; has found a job and works all the hours the restaurant will give him, and has caused no issues with drug testing or any other conditions.  He will likely do well on supervision given this track record.

The Court should also note that Mr. Seth suffers from some chronic health conditions that have required (and will require) frequent trips to his health care provider in San Joaquin County.  *See* Falk Decl., Exhibits A and B (filed under seal).  One of these conditions, type 2 diabetes, was only recently diagnosed since the publication of the Presentence Report.  See Exhibit A at 3 (reflecting "critical lab blood glucose" of 654 on 1/12/2018 requiring a quick visit; see also Page 1 (reflecting new diagnosis.)  This is a new condition for Mr. Seth, who already was on dietary restrictions due to chronic pancreatitis from 2015.  He is just getting adjusted to a new eating plan and medication regiment to manage his diabetes, which runs in his family.  He anticipates check-ups at his provider in San Joaquin every two weeks into the near future so his blood sugar levels can be monitored and his medications adjusted if necessary.  It is his hope that the Court can sentence in a manner that will not separate him from his doctor for an extended period of time.

Furthermore, although Mr. Seth did recover from the initial onset of chronic pancreatitis, he has experienced significant health issues in the past year.  For example, over the course of time this case has been pending, Mr. Seth has lost approximately 50 pounds.  *See id.*, Exhibit A, at 6 of 27.  His pancreatitis flares up approximately once every 6 months, and he is concerned about the interplay between his new diabetes diagnosis with his chronic pancreatitis.  Although he is currently not on painkillers like Percocet, he takes a cornucopia of medications at this point attempting to manage the interplay between diabetes and pancreatitis.  *See* Exhibit A at 1-2 (top two pages lists medication regiment.)

//

ARGUMENT

## I. A PROBATIONARY SENTENCE IS SUFFICIENT BUT NOT GREATER THAN NECESSARY TO FULFILL THE GOALS OF 18 U.S.C. § 3553(a)

In sentencing Mr. Seth, this Court must consider *all* of the directives set forth in 18 U.S.C. section 3553(a); the sentencing guidelines are only one factor among many to be considered by the Court. *See United States v. Booker*, 543 U.S. 220 (2005); *Kimbrough v. United States*, 128 S. Ct. 558, 570 (2007). "The overarching statutory charge for a district court is to impose a sentence sufficient, but not greater than necessary" to achieve the goals of section 3553(a). *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (internal quotations omitted). Those goals include the need to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. *See* 18 U.S.C. § 3553(a)(2). Section 3553(a) also directs the court to consider a number of additional factors, including the nature and circumstances of the offense, § 3553(a)(1); the history and characteristics of the defendant, § 3553(a)(1); the kinds of sentences available, § 3553(a)(3); the sentencing guideline range, § 3553(a)(4); pertinent Sentencing Commission policy statements, § 3553(a)(5); the need to avoid unwarranted sentencing disparities, § 3553(a)(6); and, the need to provide restitution to any victims of the offense, § 3553(a)(7).

## II. An Electronic Monitoring Sentence Alone as a Condition of Three Years of Probation is the Appropriate Sentence Here.

Given the factors set forth in 18 U.S.C. 3553(a), as well as the Zone B Guideline range, the Court has a number of options when imposing sentence in this case. The only disparity between the parties' recommended sentence at this juncture is whether or not the Court should impose a three month term at the halfway house. For the following reasons, Mr. Seth instead

5

*U.S. v. Seth*, 17-480 MMC
DEF SENT. MEMO

Case 3:17-cr-00480-MMC   Document 26   Filed 01/26/18   Page 6 of 8

requests a slight variance from the Court; that the Court forego the halfway house portion of the sentence and instead opt for the three month term of electronic monitoring at home.

First, although the Presentence Report does not so reflect, Mr. Seth spent the first month of pretrial release at a halfway house. See Docket at 7, 15 (reflecting initial release to the halfway house on September 8, 2017, then a further bond hearing on October 11, 2017 where the defendant was allowed to return home to San Joaquin County and the Court declined to put Mr. Seth on electronic monitoring). Accordingly, Mr. Seth has already done time at the halfway house and fully complied with the conditions of living there. He performed very well, without issue, such that Magistrate Judge Kim declined to put him on electronic monitoring. This should be taken into account by this Court.

Second, Mr. Seth is facing a new medical condition and a new set of medication, testing and treatment to manage that condition. His health provider is in French Camp, California, which varies from a one and a half hour to a two-hour drive from San Francisco depending on traffic. The Seths only have one car and Mr. Seth would not be able to bring it to San Francisco given that his wife and 4 children live in Stockton. Given the circumstances, a three month term in the halfway house starting in February is going to be a significant challenge transportation wise to get to his regular caregiver. Given the underlying offense and the other options the Court has for sentencing, this option is more punitive than necessary.

Moreover, Mr. Seth's employment is in Fremont and he is currently searching for better jobs in the Stockton area. There are no halfway houses in Stockton and were the Court to place Mr. Seth in a halfway house, he would need to reside in Oakland or San Francisco. This placement will not move the ball forward in the direction this family needs to go. As the income records for the family relay, Mr, Seth needs to get a full time job with a minimal commute in the Stockton area. The family's combined income monthly is no more than $2200 a month depending on how many hours Mr. Seth can obtain at the Poke Poke restaurant he works at. *See*

*U.S. v. Seth*, 17-480 MMC
DEF SENT. MEMO

6

Falk Decl,, Exhibit E (reflecting disability income for Ms,. May of approximately $1015 a month; general assistance checks of $620 a month, and Mr, Seth's income of nearly $500 a month.)  The halfway house will take 25% of any paycheck Mr. Seth earns, which will cut the already-slim margin this family operates on.  Moreover, a San Francisco or Oakland halfway house placement will not allow Mr. Seth to look for better jobs over the next three months with long term potential close to his residence in Stockton.

Because Mr. Seth was uncertain of the outcome of the instant case, he took the first job he could get once he was released.  The Poke Poke restaurant he currently works at in Berkeley is run by a relative so it was a good place to seek employment while he had a federal case pending.  Now that all parties are recommending a non-custodial sentence, Mr. Seth is determined to find a better job closer to home.  The interests of justice, as well as the long-term financial well being of the family suggest that the Court allow Mr. Seth to serve his sentence on electronic monitoring in Stockton, as opposed to at a halfway house in San Francisco, where he will literally be maintaining the status quo, but cannot readily search for and seek gainful employment in the Stockton area.  Under the circumstances of this case, a halfway house placement makes no sense.  This Court should instead vary downward from the Guideline range, credit Mr. Seth for the month he already spent in the halfway house, and order three additional months of electronic monitoring as a sanction in this case.

//
//
//
//
//
//
//

*U.S. v. Seth*, 17-480 MMC
DEF SENT. MEMO

7

## CONCLUSION

In consideration of all of the factors of 18 U.S.C. § 3553(a), Mr. Seth submits that a sentence of three years of probation with an additional three months of electronic monitoring is sufficient but not greater than necessary to fulfill the goals of sentencing articulated by Congress in 18 U.S.C. § 3553(a).

DATED: January 25, 2018                  Respectfully submitted,

                                        STEVEN G. KALAR
                                      Federal Public Defender

                                        /S/

                                        ELIZABETH FALK
                                        Assistant Federal Public Defender